IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number: 12-cv-02682-JLK

JAMAL HUNTER,

Plaintiff,

v.

The CITY AND COUNTY OF DENVER, a municipality;
Deputy GAYNEL RUMER, in his individual and official capacities; and
Deputy EDWARD KELLER, in his individual and official capacities,

Defendants.
_____

**PLAINTIFF'S MOTION FOR SANCTIONS AND EMERGENCY HEARING**
_____

Plaintiff Jamal Hunter, by and through counsel Qusair Mohamedbhai, Matthew J. Cron, Arash Jahanian, and Siddhartha H. Rathod of RATHOD | MOHAMEDBHAI LLC, hereby submits, pursuant to this Court's inherent authority, this Motion for Sanctions and Emergency Hearing. Defendant City and County of Denver ("Defendant Denver") has threatened a key witness in this case with criminal prosecution if he testifies at trial. Plaintiff thus moves this Court for an appropriate sanction to remedy this litigation misconduct, and to enjoin Defendant Denver from engaging in further witness intimidation.

**CERTIFICATION PURSUANT TO D.C.COLO.LCivR.7.1**

On June 2, 2014, counsel for Plaintiff conferred via telephone with all defense counsel in accordance with D.C.COLO.LCivR 7.1(a). Defendant Denver has opposed

the instant Motion. Defendant Deputy Edward Keller and Defendant Deputy Gaynel Rumer take no position.

## FACTUAL BACKGROUND

On March 10, 2014, Sergeant Brian Cotter and Sergeant Brad Lenderink from the Denver Police Department Internal Affairs Bureau ("IAB") interviewed Amos Page at the Crowley County Correctional Facility. This interview was conducted ostensibly for the purpose of investigating misconduct by Defendant Rumer relating to the July 18, 2011 assault of Mr. Hunter, an incident which forms the basis of many of the claims in this civil action.

Mr. Page is an indispensable witness to this case. Through an affidavit attached to Mr. Hunter's summary judgment responses, Mr. Page stated, among other things, that Defendant Rumer incited and enabled the attack on Mr. Hunter, that Defendant Rumer assisted Mr. Page in controlling Mr. Hunter's pod in the Denver Jail, and that Defendant Rumer brought in pornographic magazines and marijuana for Mr. Page to sell to inmates. [*See* ECF No. 52 at 8-10 (citing ECF No. 52-1)].

On May 28, 2014, pursuant to this Court's order, Defendant Denver disclosed documents relating to the IAB investigation of Deputy Rumer. One of those documents was an audio recording of the IAB interview with Mr. Page. **Ex. 1**, *DPD IAB Audio Interview of Amos Page*. A full and complete transcript of the recording is attached hereto. **Ex. 2**, *Page IAB Interview Transcript*. Defendant Denver's investigators began the interview by telling Mr. Page that they were Denver Police Officers who "███████ ██████████████" *Id.*, 5:2-6. They then suggest that Mr. Page "█████████

2

███████████████████████████████ " *Id*., 6:12-17. Defendant Denver's investigators mentioned ███████ and stated that Mr. Page had implicated himself "████████████" *Id*., 6:17-24. Later in the interview, Defendant Denver's investigators explicitly ██████ ████████████████████████████████████:



*Id.*, 41:2-42:10 (emphasis added).

These statements made during an interview pursuant to an IAB investigation "████████████████████████████████" are egregious. What does Mr. Page's testimony at trial have to do with the investigators' fact-finding mission with regard to Defendant Rumer's conduct? How would the IAB investigation possibly be affected by whether or not Mr. Page testifies at some point in the future? These

3

statements serve the singular purpose of intimidating Mr. Page with the threat of criminal prosecution in order to deter him from testifying at trial.[1]

Mr. Page has never been criminally prosecuted for any matters related to the July 18, 2011 Hunter incident. [*See* ECF No. 42 at 13-14 (Denver's Undisputed Fact ¶ 67)]. Thus, the threat to prosecute Mr. Page now, almost three years after the assault, is nothing but retribution for his testimony in this case.

The effect of this threat on Mr. Page was immediately evident. Despite having repeatedly stated that no promises were made to him,[2] **Ex. 2**, *Page IAB Interview Transcript* at 2:10-3:1; *see also* [*See* ECF No. 52-1 at 1] ("I have not been made any promised [*sic*] or been induced in any way to make this voluntary statement."), immediately after the DPD threat, Mr. Page falsely alleged that undersigned counsel had somehow promised him immunity from criminal prosecution, and that he had signed a document to that effect. *Id.* at 42:11-44:15. It is thus apparent from this immediate false statement that Mr. Page was intimidated by Defendant Denver's threats of criminal prosecution.

---

[1] Defendant Denver refused to disclose any documents relating to its IAB investigation, and disclosed the documents so only after this Court ordered them disclosed. Defendant Denver has impermissibly used the guise of an IAB investigation as an avenue to interfere with the litigation process.

[2] Defendant Denver's investigators also outrageously suggested that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*, 2:13-17. Mr. Page emphatically rejected that suggestion, stating that, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.*, 4:15-22.

# ARGUMENT

A.  **Defendant Denver's Investigators Have Likely Irreparably Prejudiced Mr. Hunter by Threatening his Primary Witness with Criminal Prosecution**

A court may impose sanctions for litigation misconduct under its inherent power.[3] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. (internal quotations and citation omitted); *see also Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (the purpose of imposing sanctions is to prevent abuses of the judicial process). "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

Defendant Denver's unambiguous threat to charge Mr. Page with a felony if he testifies at trial has irreparably impinged on Mr. Page's ability to provide truthful testimony. As explained above, the threatening statements by Defendant Denver's investigators were far outside the scope of the ostensible IAB investigation, and were intended only to dissuade Mr. Page from testifying.

Defendant Denver's intimidation of Mr. Page by threatening criminal prosecution interferes with the truth-seeking objective of the legal system. *See Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 81 (3d Cir. 1994) ("An American court cannot tolerate litigants' intimidation of witnesses . . . ."); *Leor Exploration &*

---

[3] Plaintiff does not invoke Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927 because those sources of sanctions concern conduct by attorneys. Plaintiff has no reason to believe that Defendant Denver threatened Mr. Page at the direction of its attorneys.

*Prod. LLC v. Aguiar*, Nos. 09-60136, 09-60683, 2010 U.S. Dist. LEXIS 101824 (S.D. Fla. Sept. 28, 2010) (finding that witness intimidation constitutes bad faith and imposing sanction of dismissal of case); *Cf. Plunk v. Vill. of Elwood*, No. 07 C 88, 2009 U.S. Dist. LEXIS 42952, at *24 (N.D. Ill. May 20, 2009) (imposing sanctions where, *inter alia*, the chief of police engaged in witness intimidation by explicitly tying officers' performance in depositions to their continued employment). The threats made by Defendant Denver's investigators served no legitimate purpose, and were calculated only to chill a key witness in this case. By using the guise of an IAB investigation to intimidate Mr. Page, Defendant Denver has demonstrated a lack of respect for the judicial process.[4]

**B.  Defendant Denver's Investigators Have Violated Civil and Possibly Criminal Law by Intimidating Mr. Page from Testifying at Trial**

In addition to constituting an abuse of the judicial process, Defendant Denver's investigators' threat to prosecute Mr. Page for testifying in federal court violates civil and potentially criminal law. 42 U.S.C. § 1985(2) provides, in relevant part: "If two or more persons conspire to deter, by force, intimidation, or threat, any party **or witness** in any court of the United States from attending such court, or from testifying to any matter pending therein, . . . ."[5] (emphasis added). The elements of a § 1985(2) claim of witness intimidation are (1) a conspiracy between two or more persons, (2) to deter a witness by

---

[4] Other inmate witnesses adverse to Defendant Denver who were previously willing to sign affidavits have refused to speak with counsel for Plaintiff after being interviewed by Defendant Denver's investigators.

[5] The statute is clumsily worded and only the third subsection contains a remedial clause. *See Rush v. Rutledge*, 460 U.S. 719, 724 (1983) ("The civil remedy for a violation of any of the subsections is found at the end of § 1985(3)).

6

force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff.[6] *Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 23 (2d Cir. 1984). Sergeant Cotter and Sergeant Lenderink have potentially conspired to deter Mr. Page from testifying freely by threatening him with criminal prosecution. Mr. Hunter has already suffered injury in that Mr. Page, immediately following the most explicit threat, falsely alleged that he was somehow promised immunity by undersigned counsel. This is an ominous sign that Mr. Page will be unable to testify truthfully at trial, and no reasonable person could be expected to do so after receiving the threats made by Defendant Denver's investigators.

The conduct of Defendant Denver's investigators may also constitute the criminal offense of witness tampering, in violation of 18 U.S.C. § 1512(b)(1) & (2)(A). The elements of this offense are that a defendant (1) "knowingly uses intimidation, threatens or corruptly persuades another person" (2) with the intent to "influence, delay or prevent the testimony . . . in an official proceeding" or to induce the person to "withhold testimony." *Id*. In *United States v. Freeman*, for example, the First Circuit sustained a conviction under this statute where the police officer defendant had made comments to a potential witness such as "I hear you've been talking and the feds are around," "remember, mum's the word", and "keep the lip zipped." 208 F.3d 332, 338 (1st Cir. 2000). Although the police officer defendant made no overt threat, the court reasoned

---

[6] A § 1985(2) conspiracy claim does not require evidence of discrimination or invidious motive because the clause contains no language requiring that conspirators act with intent to deprive their victims of equal protection of laws. *Bowie v. Maddox*, 642 F.3d 1122, 1128-29 (D.C. Cir. 2011); *Rush*, 460 U.S. at 725.

7

that he knew that the witness would be threatened by his words given his status as a police officer and the witness's knowledge of his erratic personality.  *Id*.   Mr. Page was previously in Defendant Denver's custody and, as was made clear to him, knows that the statute of limitations has not run on any charges arising from the assault on Mr. Hunter.  Defendant Denver's investigators began the interviewing by telling Mr. Page that they "███████████████."  **Ex. 2**, *Page IAB Interview Transcript*, 5:2-6.  Any reasonable person in Mr. Page's position would be intimidated by the statements made by Defendant Denver's investigators, and can no longer be expected to testify truthfully.

The presence of civil and criminal statutes prohibiting the intimidation of witnesses in federal court demonstrates the utmost importance of witness testimony free of undue influence.  Absent judicial intervention, Mr. Hunter will not receive a fair trial because of this litigation misconduct by Defendant Denver's investigators.  Thus, Mr. Hunter moves this Court to craft an appropriate sanction to remedy the misconduct by Defendant Denver and its agents.  Mr. Hunter also moves the Court to immediately enjoin Defendant Denver from engaging in further witness intimidation.  Mr. Hunter requests an emergency hearing on the issues raised in this Motion.

Respectfully submitted this 3rd day of June, 2014.

       RATHOD | MOHAMEDBHAI, LLC

       *s/ Qusair Mohamedbhai*
       Qusair Mohamedbhai
       Matthew J. Cron
       Arash Jahanian
       Siddhartha H. Rathod
       1518 Blake Street
       Denver, CO 80202
       (303) 578-4400
       (303) 578-4401 (fax)
       qm@rmlawyers.com
       mc@rmlawyers.com
       aj@rmlawyers.com
       sr@rmlawyers.com

       ATTORNEYS FOR PLAINTIFF

# CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2014, I electronically filed the foregoing **Plaintiff's Motion for Sanctions and Emergency Hearing** with the Clerk of the Court using the CM/ECF system, which will send electronic confirmation to the following:

Cathy Havener Greer, Esq.
cgreer@warllc.com

William T. O'Connell, III, Esq.
woconnell@warllc.com

COUNSEL FOR DEFENDANTS CITY & COUNTY OF DENVER

Josh A. Marks, Esq.
jam@bhgrlaw.com

Katherine M.L. Pratt, Esq.
kmlp@bhgrlaw.com

COUNSEL FOR DEFENDANT KELLER

Thomas S. Rice, Esq.
trice@sgrllc.com

Ashley M. Kelliher, Esq.
akelliher@sgrllc.com

COUNSEL FOR DEFENDANT RUMER

> RATHOD | MOHAMEDBHAI, LLC
>
> *s/ Qusair Mohamedbhai*
> Qusair Mohamedbhai