IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02682-JLK

JAMAL HUNTER,

      Plaintiff,

v.

The CITY AND COUNTY OF DENVER, a municipality;
Deputy GAYNEL RUMER, in his individual and official capacities;
Deputy EDWARD KELLER, in his individual and official capacities;

      Defendants.

---

## DECLARATION OF NICHOLAS E. MITCHELL

---

STATE OF COLORADO  )
                 )
COUNTY OF DENVER  )

    1.     I, Nicholas E. Mitchell, state the following based upon my

knowledge:

    2.     I am the Independent Monitor for the City and County of Denver

and have been Independent Monitor since August 2012.  As Independent Monitor,

I lead the Office of the Independent Monitor ("OIM").

    3.     The OIM is structurally independent from the Denver Police

Department ("DPD") and the Denver Sheriff Department ("DSD").  I was

appointed Independent Monitor by Denver's Mayor and confirmed by Denver City

Council, and I am evaluated by and regularly discuss my findings with a board of

community representatives ("Citizen Oversight Board"). I do not report to

Denver's Police Chief, Sheriff or Executive Director of Safety.

4.      Pursuant to city ordinance, the OIM reviews investigations

conducted by the Internal Affairs Bureaus ("IAB") of both DPD and DSD, and

makes recommendations on the sufficiency of those investigations. The OIM also

reviews proposed disciplinary findings by the DPD and the DSD and makes

recommendations to command staff and the Executive Director of Safety's Office

on findings and discipline in IAB cases.

5.      Pursuant to city ordinance, the OIM also publishes public reports

that may include evaluation and/or critique of the administrative mechanisms

within the DPD and the DSD for addressing complaints of misconduct, including

the processes for investigating such complaints. This includes the OIM's 2013

Semiannual Report, issued on December 3, 2013, which identified four core

problems associated with the DSD's handling and investigation of inmate

grievances that alleged serious deputy misconduct.

6.      I provide this declaration for the limited purposes of providing

general information about the process for investigating criminal allegations against

sworn members of the DSD, and specific information about the initiation of the

investigation described in the Plaintiff's motion for sanctions ("Motion"). I have

not had an opportunity to fully review that investigation, since all Internal Affairs

activity in regard to this matter has been enjoined by the Court's Order.

7.    The DSD has an Internal Affairs Bureau that is responsible for

investigating allegations of deputy misconduct inside Denver's Jails. Under DSD

policy, however, allegations of criminal conduct by deputies are generally referred

to police agencies for investigation.

8.    Under the procedures that govern DSD IAB:

> All cases that may include violations of law will be forwarded
> to the appropriate jurisdictional police agency for
> investigation. DSD Internal Affairs Bureau Procedures §
> 309.0(B) (March 2014 Revision).

9.    Under the procedures that govern DPD IAB:

> Complaints that originate in the Denver Sheriff's Internal
> Affairs Unit that are, or could be criminal in nature, are
> referred to the Denver Police Internal Affairs Bureau for
> completion of the investigation. DPD Internal Affairs Bureau
> Policy and Procedures Manual   § (F)(9) (April 2012
> Revision).

10.    The United States Department of Justice ("DOJ") supports the

development of national best practices for internal affairs departments and

investigations. These best practices take several forms, including reports issued by

groups of national experts, such as the DOJ's "Standards and Guidelines for

Internal Affairs: Recommendations from a Community of Practice" ("IAB

Guidelines").

      11.    The IAB Guidelines state:

> Public proceedings or filings in which declarations under oath reveal allegations of misconduct against an agency's employee should be considered sources of complaints when the allegations are brought to the attention of a member of the agency responsible for the intake of complaints.     IAB Guidelines § 1.2.

      12.    The IAB Guidelines also state:

> A criminal investigation of an agency employee, particularly one involving a felony or crime of moral turpitude, is so serious that an agency should consider extraordinary measures to ensure that the investigation is as thorough and independent of conflicts of interest as possible. Ideally, an Internal Affairs team trained in criminal investigations would handle such cases and answer only to the agency head or designee. If Internal Affairs does not have a criminal investigation team, another team of investigators should be selected . . . . IAB Guidelines § 3.3.

      13.    When I became aware of the inmate affidavits that were filed by the Plaintiff as part of this federal lawsuit, I spoke with Sheriff Gary Wilson. The affidavits contain serious allegations of criminal conduct by Deputy Sheriff Gaynel Rumer and possibly other deputies. I therefore recommended to Sheriff Wilson that the Denver Police Department IAB conduct an investigation into the criminal allegations made against Deputy Rumer. Sheriff Wilson agreed with this recommendation.

      14.    I also spoke with DPD IAB Commander Ron Thomas at around that

same time.  I conveyed to Commander Thomas that the Denver Police IAB

investigation should focus on the allegations of criminal behavior by Deputy

Rumer, rather than any possible violations of DSD rules raised in the affidavits,

which could be properly handled by Denver Sheriff IAB.

15.    I did not at any point recommend that DPD IAB conduct a criminal

investigation into the behavior of the inmate affiants in this lawsuit.

I declare under penalty of perjury that the foregoing statements are true and

correct.

Executed on:

_____6/11/14_____
Date

_____
Nicholas E. Mitchell
Independent Monitor
Office of the Independent Monitor